UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIANA BONACASA, *et al.*, <br><br> Plaintiffs, <br><br> -v.- <br><br> STANDARD CHARTERED PLC and STANDARD CHARTERED BANK, <br><br> Defendants. | No. 1:22-cv-03320 (ER) (OTW) |
| MARIBEL MOORE, *et al.*, <br><br> Plaintiffs, <br><br> -v.- <br><br> STANDARD CHARTERED PLC and STANDARD CHARTERED BANK, <br><br> Defendants. | No. 1:23-cv-02834 (ER) (OTW) |
| ESTATE OF ANNE T. SMEDINGHOFF, *et al.*, <br><br> Plaintiffs, <br><br> -v.- <br><br> STANDARD CHARTERED BANK, <br><br> Defendant. | No. 1:23-cv-02865 (ER) (OTW) |

**OPINION & ORDER**

Ramos, D.J.:

Plaintiffs bring this action pursuant to the Anti-Terrorism Act ("ATA"), as amended by the Justice Against Sponsors of Terrorism Act ("JASTA"), alleging that Standard Chartered PLC ("SC PLC")—through its subsidiary, Standard Chartered Bank ("SCB") (together with SC PLC, "Standard Chartered")—aided and abetted al-Qaeda by providing banking services to the Fatima Group ("Fatima"), a Pakistani fertilizer company that purportedly supplied al-Qaeda with materials used to make improvised explosive devices ("IEDs"). Doc. 1. Plaintiffs are family members of service members killed by such explosive devices in Afghanistan between 2013 and 2015. Doc. 1 at 9.

The instant motion concerns a discovery dispute between Plaintiffs and a nonparty, Bank of America Corp. ("Bank of America"). Before the Court is Plaintiffs' motion to compel Bank of America to provide deposition testimony pursuant to Federal Rule of Civil Procedure 30(b)(6). Doc. 116. For the reasons set forth below, Plaintiffs' motion is DENIED.

## I.   BACKGROUND

Plaintiffs' interest in Bank of America arises from the bank's December 2012 meeting with the U.S. Department of Defense Joint Improvised Explosive Device Defeat Organization ("JIEDDO"), which occurred around the same time JIEDDO met with SCB. Doc. 117 at 5–6, 8. During these meetings, JIEDDO presented evidence that calcium ammonium nitrate ("CAN") fertilizer sold by Fatima was being used in nearly all IED attacks in Afghanistan and that Fatima had refused to cooperate in efforts to restrict the product's use for such purposes. *Id.* at 5–7, 8. JIEDDO allegedly urged the banks to end any existing relationships with Fatima. *Id.* Bank of America responded promptly, placing Fatima on a "do not do business" list three days after the meeting and issuing a

cease-and-desist letter to Fatima.[1]  *Id.* at 8.  Meanwhile, SCB delayed acting and ultimately continued doing business with Fatima—a response that was, according to then-director of the JIEDDO, "'utterly useless.'"  *Id.* at 7–8 (quoting *Bonacasa v. Standard Chartered PLC*, No. 22-cv-3320 (ER), 2023 WL 7110774, at *3 (S.D.N.Y. Oct. 27, 2023)).

Plaintiffs argue that testimony from Bank of America is relevant to show:  (1) what JIEDDO communicated to the banks, which would indicate "what knowledge SCB possessed about the allegations against Fatima," Doc. 117 at 14; and (2) how peer banks responded to JIEDDO's warnings, which would inform whether SCB's response conformed to industry standards.  *Id.* at 14–15.

Bank of America initially refused to produce any documents for Plaintiffs, but, after a Court conference, it yielded, producing the slide deck JIEDDO distributed in their December 2012 meeting, as well as other materials concerning Fatima's complicity and Bank of America's decision-making process following the meeting.  *Id.* at 9–10.

Plaintiffs now seek deposition testimony to further discuss these topics.  The deposition notice covers:  "(1) [Bank of America's] December 2012 meeting with JIEDDO; (2) services Bank of America provided to Fatima; (3) due diligence, adverse media monitoring, and any investigations Bank of America conducted into its relationship with Fatima; (4) Bank of America's understanding of Fatima's role in manufacturing CAN that was used in IED attacks in Afghanistan; and (5) Bank of America's decision to include Fatima on a 'do not do business' list."  Doc. 102-1 at 5.

Following a meet and confer on September 16, 2024, Plaintiffs agreed to limit the deposition to three and a half hours and to narrow the topics to exclude "due diligence, adverse media monitoring, and any investigations Bank of America conducted into its

---

[1] The cease-and-desist letter allegedly "request[ed] that [Fatima] remove from its website any reference to [Bank of America] as market maker of [Fatima's] American Depository Receipts," a service that Bank of America had stopped providing to customers in March 2012.  Doc. 102-4 at 2.

3

relationship with Fatima." Doc. 102-7 at 5. Bank of America rejected Plaintiffs' revised proposal, maintaining that the noticed topics were not relevant to Plaintiffs' cause of action because the topics "did not address SCB specifically." *Id.* at 2; Doc. 117 at 6. In a pre-motion conference on November 22, 2024, the Court granted Plaintiffs leave to file the instant motion. Doc. 117 at 6.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 45 enables a party to command a nonparty to produce documents or testimony, including a Rule 30(b)(6) deposition. *See* Fed. R. Civ. P. 45(a). "Motions to compel compliance with Rule 45 subpoenas are governed by the relevancy and proportionality guidelines of Rule 26." *BLST Northstar, LLC v. Atalaya Capital Management LP*, No. 24-mc-66 (GHW) (RWL), 2024 WL 2279195, at *3 (S.D.N.Y. Mar. 12, 2024); *see also Ambac Assurance Corp. v. U.S. Bank National Association*, No. 17-cv-2614 (WHP) (KHP), 2020 WL 526404, at *2 (affirming that Rule 45 "permits parties to obtain discovery from nonparties" but that "[t]he information requested in the subpoena must be consistent with Rule 26(b)(1), meaning that the information must be relevant to the claims and defenses and proportional to the needs of the case"). Rule 26(b) limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Relevance is construed broadly, meaning any information that "bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case" is discoverable. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (internal citation omitted).

Federal district courts have broad discretion in deciding motions to compel. *See Grand Central Partnership, Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999). "The party seeking discovery bears the initial burden of proving that the information and testimony sought in the subpoena are relevant and proportional to the needs of the case, and the burden then shifts to the party opposing discovery to show that the information sought is privileged or unduly burdensome." *Cohen v. Group Health Inc.*, No. 22-mc-0200 (PAE) (KHP), 2022 WL 4534552, at *2 (S.D.N.Y. Sept. 28, 2022).

The court must "quash or modify a subpoena that subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(iv). Factors that bear on the undue burden inquiry include: whether the discovery sought is "unreasonably cumulative or duplicative" or "can be obtained from some other source that is more convenient, less burdensome, or less expensive"; whether the party seeking it "has had ample opportunity to obtain the information by discovery in the action"; and whether it "is outside the scope permitted by Rule 26(b)(1)." *Bigsby v. Barclays Capital Real Estate, Inc.*, 329 F.R.D. 78, 81 (S.D.N.Y. 2019) (quoting Fed. R. Civ. P. 26(b)(2)(C)).

"'General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information.'" *Go New York Tours, Inc. v. Aurora Tourism Services, LLC*, 2023 WL 9111158, at *1 (S.D.N.Y. Dec. 20, 2023) (quoting *Melendez v. Greiner*, No. 1-cv-7888 (SAS) (DF), 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003)).

### III.   DISCUSSION

#### A.  Relevance of Bank of America's Testimony to Plaintiffs' ATA Claims

Plaintiffs' ATA claims against SCB require a showing that SCB "knowingly provid[ed] substantial assistance" to a person or entity that committed an act of intentional terrorism. 18 U.S.C. § 2333(d)(2). In *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023), the Supreme Court held that liability for aiding and abetting under the ATA

requires "conscious, voluntary, and culpable participation in another's wrongdoing." *Id.* at 493.

Plaintiffs have not satisfied the relevance requirement underlying Rule 45 motions to compel for three separate reasons.

*First*, testimony from Bank of America on the noticed topics would not provide an industry standard against which to compare SCB's response, because the banks' prior relationships with Fatima differed substantially. As this Court has previously acknowledged, *see* Doc. 50, Transcript at 18, Bank of America's relationship to Fatima was "not nearly" coextensive with SCB's relationship to the company. Indeed, Bank of America says that they never did business with Fatima in the first place, Doc. 125 at 14; rather, their connection to Fatima was limited to market-making in Fatima American Depository Receipts ("ADRs"), Doc. 102-3 at 4. By contrast, SCB provided Fatima's "daily banking business" as well as "vital and substantial project financing, investment, [] loans" and "vital U.S. dollar clearing services." Doc. 65 at 29. Given the dissimilarity of their relationships to Fatima, no insight that Bank of America could provide about the noticed topics would offer a helpful basis for comparison relative to SCB.

*Second*, "[f]ailure to follow industry standards—without more—is insufficient to support scienter." *In re Keryx Biopharmaceuticals, Inc.,* No. 13-cv-1308 (JGK), 2014 WL 585658, at *12 (S.D.N.Y. Feb. 14, 2014); *see also Stevelman v. Alias Research Inc.*, 174 F.3d 79 (2d Cir. 1999) (violation of industry standards not enough to show scienter); *In re Terrorist Attacks on September 11, 2001*, 718 F.Supp.2d 456, 489 (S.D.N.Y. 2010) ("[N]oncompliance with banking laws and industry standards will not alone render a bank liable for the violent attacks committed by a terrorist organization who benefitted, in some general, nondescript manner, from the monies passing through the bank during the performance of routine banking services."). In other words, even if testimony from Bank of America on the noticed topics could provide an industry standard against which to compare SCB, SCB's failure to meet that standard would not meaningfully bear on the

central issue in the case—whether SCB "knowingly provided substantial assistance" to Fatima. 18 U.S.C. § 2333(d)(2).

*Third*, Bank of America asserts that it could not identify any current employee who attended the JIEDDO meeting in December 2012—meaning that any 30(b)(6) representative compelled to testify would have no information or knowledge beyond the materials already provided by Bank of America to the Court, including the slide deck distributed by JIEDDO in relation to the 2012 meeting. Doc. 125 at 12; *see* Doc. 124-1, Exhibit A. Thus, any deposition testimony provided by such a witness would be likely redundant and thus irrelevant.

### B. Undue Burden on Bank of America

Compelling Bank of America to provide a Rule 30(b)(6) witness would also be unduly burdensome, because the Bank allegedly could not identify any current employee who attended the JIEDDO meeting in December 2012. Doc. 125 at 12. Therefore, the Bank would have to expend substantial time and resources educating a witness on the noticed topics—a burden that would outweigh the probative value of any testimony a witness from the Bank could provide.

In light of these considerations, compelling a Rule 30(b)(6) witness from Bank of America to testify in court would be minimally relevant and considerably burdensome—a conclusion that counsels against granting Plaintiffs' request.

### IV.   CONCLUSION

For the foregoing reasons, the Plaintiffs' motion is DENIED.

It is SO ORDERED.

Dated:   July 16, 2025
         New York, New York

_____
EDGARDO RAMOS, U.S.D.J.